UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RONALD GATHRIGHT,

    Plaintiff,

v.                               Case No. 8:19-cv-830-T-SPF

ANDREW M. SAUL,
Commissioner of the Social
Security Administration,

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

### I.  Procedural Background

Plaintiff filed an application for DIB on September 22, 2017, alleging disability beginning on September 20, 2017 (Tr. 180–86). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 82–93, 95–107). Per Plaintiff's request, the ALJ held an administrative hearing at which Plaintiff appeared and testified (Tr. 39–65, 123–24). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 23). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals

Council denied (Tr. 1–6). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.     Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning September 20, 2017 (Tr. 180). Plaintiff obtained a bachelor's degree in Technology Management in 2005 (Tr. 47). Plaintiff's past relevant work experience included work as a fiber optics installer, video teleconferencing manager, dispatcher, medical support assistant, and patient relations assistant (Tr. 62). Plaintiff alleged disability due to the following: peripheral neuropathy of the right and left upper extremities; peripheral neuropathy of the right and left lower extremities; chronic pain syndrome ("CPS"); paroxysmal atrial fibrillation; left hip osteoarthritis and degenerative joint disease; right hip osteoarthritis and degenerative joint disease; chronic fatigue syndrome ("CFS"); and bilateral plantar fasciitis (Tr. 96).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2022, and had not engaged in substantial gainful activity since September 20, 2017, the alleged onset date (Tr. 17). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: obesity, hypertension, intermittent atrial fibrillation, peripheral neuropathy, and osteoarthritis of the hips and knees (Tr. 17). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

sedentary work with certain functional limitations (Tr. 19). Particularly, the ALJ found that

> [Plaintiff] can sit between seven and eight hours per eight hour workday and can stand/walk for four hours per eight-hour day; he can only occasionally climb balance, stoop, kneel, crouch and crawl; he can never climb ladders, ropes or scaffolds or be at unprotected heights; he should avoid extreme cold temperatures and extreme vibration; he [is] limited to frequent bilateral fingering; he should be able to stand briefly for one second every fifteen minutes without leaving the work station.

(Tr. 19). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 19).

After considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), the ALJ determined that Plaintiff could perform his past relevant work as a video teleconferencing manager, dispatcher, medical support assistant, and patient relations assistant (Tr. 22). Accordingly, the ALJ found Plaintiff not disabled (Tr. 22).

### III.     Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). A "physical or mental impairment" is an impairment that results

from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and (4) whether the claimant can perform his past relevant work. If the claimant cannot perform the tasks required of his prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his age, education, and work experience. 20 C.F.R. § 404.1520(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 404.1520(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the Court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the Court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.   Analysis

Plaintiff argues that the ALJ erred by failing to address his allegations of CPS and CFS at steps two and four of the sequential evaluation process. Plaintiff also argues that the ALJ failed to properly evaluate his complaints of lack of strength and dexterity on his hands in assessing his RFC. For the reasons that follow, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A. Plaintiff's CPS and CFS Impairments

At step two, a claimant must show that he suffers from an impairment or combination of impairments that significantly limits his physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1521. An "impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019). An ALJ need only find that the applicant has a single severe impairment to satisfy step two. *See Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("there is no need for an ALJ to identify every severe impairment at step two"). However, an ALJ is required to consider Plaintiff's severe and non-severe impairments at the following steps of the evaluation process. *See Schink,* 935 F.3d at 1268 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). Thus, in assessing a claimant's RFC at step four of the sequential evaluation process, the "ALJ must consider the [claimant's] medical condition taken as a whole." *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987).

At step two, the ALJ found that Plaintiff had the severe impairments of obesity, hypertension, atrial fibrillation, neuropathy, and osteoarthritis (Tr. 18). The ALJ also found various non-severe impairments, including thyroid problems, hyperlipidemia, and fibromyalgia (Tr. 18). Further, the ALJ stated that "the record reflects the [Plaintiff] sought medical attention for other issues during the time under review" but found that the medical records did not support a conclusion that those conditions were severe (Tr. 18).

6

The ALJ's blank statement as to "other issues" does not provide enough analysis for the Court to determine whether the ALJ considered Plaintiff's alleged medical impairments of CPS and CFS at step two. Without such analysis, the Court is unable to determine whether the ALJ's step two findings are supported by substantial evidence. *See Keeton*, 21 F.3d at 1066.

Assuming, however, that the ALJ erred in finding Plaintiff's CPS and CFS were non-severe impairments at step two, his error is harmless because, at step four, the ALJ considered all of Plaintiff's impairments to the extent that they were supported by the record. *See Schink*, 935 F.3d at 1268 (stating that an ALJ's error at step two could be harmless if the ALJ nevertheless proceeded in the sequential evaluation and duly considered all of Plaintiff's impairments when assessing his RFC). Notably, in assessing Plaintiff's RFC, the ALJ considered Plaintiff's claim that he could not work due to pain and fatigue but found that his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record" (Tr. 19). Consequently, the ALJ limited Plaintiff to perform sedentary work with other limitations (Tr. 19). Upon review of the record, the Court finds that the ALJ's findings are supported by substantial evidence.

    i.    **CPS**

To support his argument that the ALJ failed to properly consider his subjective complaints of CPS in assessing his RFC, Plaintiff points to the diagnosis of CPS by Dr. Michael Spellman (Tr. 1060), and the Veterans Administration's ("VA") decision assigning him a 50% disability rating for "pain disorder" (Tr. 824). The Commissioner

counters that the ALJ properly considered all the relevant evidence in assessing the RFC and that the records cited by Plaintiff do not support his RFC argument. The Court agrees with the Commissioner.

Dr. Spellman diagnosed Plaintiff with CPS in July 2015. Although the ALJ did not explicitly address Dr. Spellman's findings at step four, the ALJ noted that most of the medical records provided by Plaintiff—which include Dr. Spellman's diagnosis—preceded Plaintiff's alleged onset date; therefore, they were "of questionable relevancy" (Tr. 19–20). In assessing Plaintiff's RFC, the ALJ was not required to address evidence that discussed Plaintiff's condition outside the relevant period. *See McLain v. Comm'r, Soc. Sec. Admin.*, 676 F. App'x. 935, 938 (11th Cir. 2017) (stating that an ALJ is tasked only with determining whether a plaintiff was disabled between the onset date and his date of last insured). Dr. Spellman's diagnosis was issued two years before the alleged onset date (September 20, 2017). Moreover, no medical records from the relevant period contain a CPS diagnosis,[1] and Plaintiff's work records demonstrate that he continued working for two years after the diagnosis (Tr. 86, 196). *See* 20 C.F.R. § 404.1529(c)(3) (in rendering his RFC determination, the ALJ will consider all evidence including plaintiff's attempts to work). Considering the date of the diagnosis and Plaintiff's work history, the Court finds no error in the ALJ's failure to consider Plaintiff's CPS diagnosis in assessing his RFC.

---

[1] For example, Johnna Peters, the Agency Single Decision Maker ("SDM"), noted in her Disability Determination that no medical source diagnosed Plaintiff with CPS and that Plaintiff was not seeing a medical provider or taking medications for the alleged condition (Tr. 86). The evidence discussed in the parties' memorandum also fails to show that Plaintiff was diagnosed or treated for CPS during the relevant period (*see* Doc. 20 at 5).

In reaching his RFC determination, the ALJ also considered the VA's disability ratings but discounted it on the basis that "other agencies follow different rules and standards in determining disability" (Tr. 21). Although the ALJ's analysis of the VA's determination is apparently superficial, *see Weltz v. Berryhill*, No. 8:17-CV-2860-T-AEP, 2018 WL 6716090, at *3 (M.D. Fla. Dec. 21, 2018) (stating that "it is legal error to superficially reject a VA disability rating and not address it on its merits because of its differing, more lenient, and non-binding standards"), the Court finds no error in the ALJ's rejection of the VA's rating. Plaintiff was assigned a 50% service-connected disability for CPS on January 30, 2015 (Tr. 601). However, Plaintiff continued working for two years after the VA's decision, and his disability rating due to CPS did not change in subsequent VA's evaluations (Tr. 434–35). In other words, there is no evidence that Plaintiff's condition worsened during the relevant period to support a different RFC finding.

Further, the ALJ discounted the opinions of various medical doctors submitted in support of Plaintiff's application for VA's benefits, including Drs. Gingie Swanthri De Silva and William Hulley's opinions (Tr. 21).[2] The ALJ concluded that the opinions—which included some pain-related findings—were not supported by the physicians' own treatment notes and were simply a regurgitation of Plaintiff's subjective complaints (Tr. 21). As a result, the Court concludes that, contrary to Plaintiff's arguments, the ALJ considered Plaintiff's complaints of CPS and all relevant evidence supporting such impairment, including Plaintiff's VA's disability rating.

---

[2] Plaintiff has not challenged the ALJ's evaluation of any of the medical opinions in the records.

### ii. CFS

Plaintiff next argues that despite the existence of documentation supporting a diagnosis of CFS, the ALJ failed to address such condition in his RFC assessment. In support of his claim, Plaintiff cites medical records from Thomas Collins, P.A., and Dr. De Silva finding that Plaintiff suffered from CFS (Tr. 508, 510, 512, 515, 772–73).

Like CPS, Plaintiff's diagnosis of CFS predates his alleged onset date. In June 2016, Mr. Collins reported that Plaintiff had been diagnosed with chronic fatigue (Tr. 772–75). Mr. Collins noted that chronic fatigue could affect Plaintiff's ability to concentrate and cause forgetfulness (Tr. 774). However, Mr. Collins stated that Plaintiff's chronic fatigue only incapacitated Plaintiff for less than a week in the last year (2015–2016) and did not impact Plaintiff's ability to work (Tr. 774–75). *See Barnhart v. Walton*, 535 U.S. 212, 217 (2002) (stating that an impairment must last or be expected to last not less than twelve months to be disabling). Moreover, the record indicates that after his initial diagnosis of chronic fatigue, Plaintiff continued working for over a year (Tr. 196). Considering the time of this diagnosis, the lack of work-related limitations identified by Mr. Collins, and Plaintiff's work history, the Court finds no error in the ALJ's failure to consider Mr. Collins' findings in assessing Plaintiff's RFC. *See McClain*, 676 F. App'x at 938.

Contrary to Mr. Collins, Dr. De Silva treated Plaintiff during the relevant period (from May 2016 through May 2018). In November 2017, Dr. De Silva's opined that due to "the progression of [Plaintiff's] arthritis symptoms and associated fatigue and cognitive changes," Plaintiff was unable to be gainfully employed at the time (Tr. 508). Dr. De

Silva, however, diagnosed Plaintiff with "other fatigue," not with CFS (Tr. 508, 512, 517, 525, 525, 527, 546, 551, 841, 995). *See* SSR 14-1P ("We will find that a person has an MDI of CFS if a licensed physician diagnosed CFS, and this diagnosis is not inconsistent with the other evidence in the person's case record."). Therefore, Dr. De Silva's diagnosis does not support the existence of Plaintiff's alleged condition during the relevant period.

Further, in assessing Plaintiff's RFC, the ALJ considered Dr. De Silva's opinion regarding Plaintiff's fatigue and other impairments, but discounted it on the basis that it was conclusive, it was based solely on Plaintiff's subjective complaints, and it was inconsistent with Dr. De Silva's treatment notes (Tr. 21).[3] An independent review of the record indicates that Plaintiff's fatigue was simply treated with vitamins and supplements (Tr. 510, 517, 520, 525, 527, 546, 551), and that, as stated by the ALJ, Dr. De Silva's findings regarding Plaintiff's fatigue relied mostly on Plaintiff's reports of severe exhaustion, rather than on objective evidence (Tr. 508). Therefore, Dr. De Silva's treatment notes do not support his opinion. Based on the evidence, the Court concludes that in assessing Plaintiff's RFC, the ALJ considered Plaintiff's complaint of CFS but properly discounted it to the extent it was not supported by the record.

---

[3] Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).

11

### B. Plaintiff's Dexterity Impairments

Plaintiff also contends that the ALJ erred in finding that he was capable of frequent fingering and in failing to include limitations related to holding objects in his RFC. In support of his claim of error, Plaintiff quotes his testimony stating that he has problems holding things and could not perform his last job because it required the frequent use of a keyboard to enter data (Doc. 20 at 16; Tr. 57–58). Plaintiff further notes that Dr. Hulley confirmed that Plaintiff suffered moderately severe peripheral neuropathy with numbness on hands and reduced dexterity, "[y]et the ALJ found that the Plaintiff could finger and did not address handling objects." (Doc. 20 at 16). In other words, Plaintiff appears to argue that the evidence in the record supports further restrictions than those included in the ALJ's RFC determination.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545. To determine a claimant's RFC, an ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. § 404.1545(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. § 404.1520(e).

In reaching his RFC determination, the ALJ acknowledged Plaintiff's testimony that he could not work due to his neuropathy and that he had difficulty lifting and holding

things (Tr. 19). The ALJ concluded, however, that the alleged intensity, persistence, and limiting effects of Plaintiff's symptoms were not supported by the record (Tr. 19). In support of this finding, the ALJ evaluated the opinion of various physicians, including Dr. Hulley's opinion. Dr. Hulley opined that Plaintiff suffered from numbness in hands and reduced dexterity (Tr. 20–21, 477). The ALJ provided Dr. Hulley's opinion with little weight[4] (Tr. 21). However, the ALJ acknowledged Dr. Hulley's diagnosis of peripheral neuropathy[5] and, accordingly, limited Plaintiff to frequent bilateral fingering (Tr. 19, 20). Although Plaintiff argues that further restrictions should had been included, Plaintiff has failed to show how Dr. Hulley's findings support further limitations. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (stating that a plaintiff bears the burden of proving that his or her impairments prevent him or her from performing past relevant work). Rather, Plaintiff appears to ask the Court to reweigh the evidence supporting the ALJ's RFC findings, which the Court cannot do. *See Bloodsworth*, 703 F.2d at 1239 (stating that "even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence"). Because the ALJ

---

[4] The ALJ found that Dr. Hulley's opinion was not consistent with his own findings and the opinion was based largely on Plaintiff's subjective complaints (Tr. 21). Plaintiff did not challenge the ALJ's evaluation of Dr. Hulley's opinion. Therefore, Plaintiff has waived any argument in this regard. *See Cherkaoui v. Comm'r of Soc. Sec.*, 678 F. App'x 902, 904 (11th Cir. 2017) ("An appellant abandons a claim when she either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

[5] Peripheral neuropathy may cause, among other things, damage to the nerves that control muscles and movement in the body including the hands, or to the sensory nerves that permit a person to feel pain, temperature, or light touch. *See Peripheral Neuropathy*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/Health/conditions-and-diseases/peripheral-neuropathy (last visited July 8, 2020).

made an RFC assessment based on all the relevant evidence of record and Plaintiff has failed to show that further non-exertional limitations were required, the Court finds no error.

### V. Conclusion

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Defendant and close the case.

ORDERED in Tampa, Florida, on August 19, 2020.

SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE